The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provision of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. Plaintiff's average weekly wage was sufficient enough to generate the maximum compensation rate of $466.00 per week at the time of the alleged injury.
4. Plaintiff is alleging an occupational disease that occurred on or about April 4, 1994, resulting in an injury to plaintiff's right shoulder.
5. The defendant-employer has denied liability, and the issue before the Commission is whether plaintiff, in fact, suffers from an occupational disease.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff was employed with the Ecusta Division of P.H. Glatfelter (hereinafter, "Glatfelter"), a self-insured administered by Alexsis Risk Management Services, for 17 years, last working there April 5, 1994. She was 53 years old with a 12th grade education.
2. Her last position with Glatfelter was switching between relief supervisor, where she kept 14 machines running and filled with bobbins of paper so that employees under her supervision could make production, and finishing department employees, where she operated those machines with a production goal of 42 to 48 bobbins per day.
3. A bobbin holds anywhere from 6500 to 7000 meters of paper; rolls of paper weight 1500 or 1600 pounds. As a finishing department employee, to make each of the 42 to 48 bobbins required her to slit paper rolls to size for the bottom, run paper through the machine, label each on the front, transfer them from one side of the machine to the back, number each, loosen the shaft with a wrench and pull off each bobbin and core to stack them on pallets from 45 to 62 high.
4. This procedure involved much repetitive activity involving her shoulders. She worked at least eight hours and sometimes doubled to sixteen hours per day. Before that position she worked as a reclaim person; this department accepted bobbins that were loose, broken or had wrinkles and repaired them. The production goal there was an "MAL" of 80% of 80 bobbins per day.
5. She would lift bobbins weighing from 6 to 20 pounds, thread them through a machine, loop them up and remove and stack them on pallets to 55 high, which involved overhead lifting. She ran the larger bobbins and frequently had to beat them into place with her hands because the cores were damaged. She did jobs involving repetitive motion for 12 years.
6. For eight months ending in April 1994, she also worked cleaning 19 to 20 houses a month. She washed windows only occasionally, and the work involved no heavy cleaning.
7. Plaintiff first had problems with her shoulder years before she first saw Dr. Graham about it in March of 1994. Plaintiff first felt shoulder pain sometime in 1991. She took aspirin and other medication to enable her to continue with her work. After seeing her family doctor, James Keely, M.D., for unsuccessful conservative treatment, she went to see Drs. Graham and Thompson. She reported long-standing shoulder problems to both Dr. Graham and Dr. Thompson. She was diagnosed with a right rotator cuff tear in March, 1994, and had a total of three operations on the shoulder. The rotator cuff resisted treatment by sustaining repeat tears between surgeries even with diminished activity.
8. Dr. Thompson testified that plaintiff's job could have contributed to her shoulder condition. Dr. Thompson further stated that plaintiff's job put her at an increased risk as well as accelerated or aggravated her shoulder problems while she was employed by defendant-employer.
9. Dr. Graham testified that over the 16 and 17 year period of employment with defendant-employer her job placed her at a greater risk of developing a torn rotator cuff. Further Dr. Graham stated that plaintiff's job duties could have accelerated and/or aggravated plaintiff's condition.
10. The undersigned gives great weight to the opinions of Drs. Thompson and Graham that plaintiff has in fact developed an occupational disease while in the course and scope of her employment.
11. Plaintiff's last day of work for defendant was April 5, 1994 and she currently receives $1,109.00 per month from her long-term disability policy of which plaintiff has paid the premiums.
12. As the result of plaintiff's occupational disease, she has been unable to earn wages in her former position with defendant-employer or in any other employment from 5 April 1994 through the present.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. An occupational disease under N.C.G.S. 97-53(13) must be characteristic of persons engaged in the occupation in which the claimant in engaged, must not be an ordinary disease of life to which the general public is equally exposed, and a causal connection must exist between the disease and the claimant's employment. Rutledge v. Tultex Corporation/Kings Yarn,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).
2. Since plaintiff has established that she suffers from an occupational disease, plaintiff shall receive from defendants $466.00 per week from 5 April 1994 and continuing until plaintiff returns to work or until further order of this Commission. N.C.G.S. § 97-53(13), 97-29.
3. Defendants shall pay all of plaintiff's medical bills as they relate to her occupational disease. Further vocational rehabilitation shall also be provided to plaintiff to help effect a cure or give relief for plaintiff's condition. N.C.G.S. §97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for compensation for her occupational disease is GRANTED.
2. Since plaintiff has established that she suffers from an occupational disease plaintiff shall receive from defendants $466.00 per week and continuing until plaintiff returns to work or until further order of this Commission.
3. Defendants shall pay all of plaintiff's medical bills as they relate to her occupational disease. Further vocational rehabilitation shall also be provided to plaintiff to help effect a cure or give relief for plaintiff's condition.
4. Defendants' are entitled to a credit for the long term disability payments plaintiff has received.
5. An attorney fee of 25% of the award is hereby approved for plaintiff's counsel. This amount shall be paid directly to plaintiff's counsel.
6. Defendants shall pay cost.
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________ DIANNE C. SELLERS COMMISSIONER
S/ _________________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/db
6/18/97